**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM WOODARD,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-06-1968** |
| | : | **(JUDGE VANASKIE)** |
| **FEDEX FREIGHT EAST, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court in this action to recover overtime compensation are (1) Defendant

FedEx Freight East, Inc.'s ("FedEx Freight") Motion to Strike Plaintiff's Class and Collective

Action Allegations Pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 23(d), or, in the

alternative, for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) ("Motion to Strike or

for More Definite Statement"), (Dkt. Entry 3); and (2) Plaintiff William Woodard's Motion to Toll

the Running of the FLSA Statute of Limitations Period ("Motion to Toll FLSA-SOL"). (Dkt. Entry

39.) Mr. Woodard, a former employee of FedEx Freight, alleges that FedEx Freight

misclassified him and other similarly situated employees as exempt from the overtime pay

requirements of federal and Pennsylvania law. He further alleges that he and other

misclassified employees worked in excess of forty hours per week without receiving the

overtime premium pay mandated by these laws. Mr. Woodard claims that FedEx Freight's

misclassification and consequent failure to pay overtime violated the Fair Labor Standards Act

of 1938 ("FLSA"), 29 U.S.C. §§ 201-218; the Pennsylvania Minimum Wage Act of 1968

("MWA"), 43 Pa. Stat. Ann. § 333.101-.115; and the Pennsylvania Wage Payment and Collection Law ("WPCL").  43 Pa. Stat. Ann. §§ 260.1-.45.  Mr. Woodard asserts these claims on behalf of himself and others similarly situated, seeking to prosecute the FLSA claim as a collective action under 29 U.S.C. § 216(b), and the MWA and WPCL claims as a class action under Fed. R. Civ. P. 23(b)(3).[1]

In moving to strike the state wage law class action allegations, FedEx Freight argues that a state wage law class action cannot be maintained in the same proceeding as an FLSA collective action because the opt-out mechanism of Rule 23 class actions is "inherently incompatible" with the opt-in scheme of FLSA collective actions.  Finding merit in this argument, the Court will grant the motion to strike.

FedEx Freight also argues that the FLSA collective action allegations must be stricken because misclassification claims are fact-intensive, focusing on the duties actually performed by the employee, and therefore unsuitable for collective action treatment.  The Court will deny FedEx Freight's motion to strike because misclassification cases are certified as collective actions notwithstanding the concerns raised by FedEx Freight.  The Court will, however, grant FedEx Freight's motion for a more definite statement, and require Mr. Woodard to define more

---

[1]Mr. Woodard also sought to certify the MWA and WPCL claims as a class action under Fed. R. Civ. P. 23(b)(2).  At oral argument, counsel for Mr. Woodard withdrew the request for class certification under Rule 23(b)(2).  (Oral Argument Tr., Feb. 1, 2007, Dkt. Entry 33, at 23.) Accordingly, FedEx Freight's motion to strike these allegations will be granted.

precisely the class of workers on whose behalf he purports to bring this action.

As to the motion to toll the running of the FLSA statute of limitations applicable to the claims of the prospective opt-in plaintiffs, Mr. Woodard argues equitable tolling is appropriate because the prospective opt-in plaintiffs are prejudiced by the delay caused by FedEx Freight's motion.  Because this is not an appropriate basis for equitable tolling, Mr. Woodard's motion will be denied.[2]

## I. BACKGROUND

### A. Factual Background

The allegations of the Amended Complaint, taken as true, reveal the following: From September, 2004, through July, 2005, Mr. Woodard worked for FedEx Freight as a shift manager at the company's facility in Pocono Summit, Pennsylvania.  (Am. Compl., Dkt. Entry 2, ¶ 23.)  FedEx Freight classified Mr. Woodard as an exempt employee, meaning he was not covered by certain federal or state wage law protections, such as the right to be paid overtime. Despite this classification, Mr. Woodard's actual work required little skill and no capital investment.  (Id. ¶ 25.)  And while his job title was shift "manager," he had no managerial responsibility nor did he exercise independent judgment.  (Id.)  Mr. Woodard frequently worked in excess of forty hours each week.  (Id. ¶ 26.)  Because he was classified as an exempt

---

[2]The Court has jurisdiction over Mr. Woodard's FLSA claim pursuant to 28 U.S.C. § 1331, and over the MWA and WPCL claims pursuant to 28 U.S.C. § 1367(a).

employee, he was not compensated for these additional hours, either at his regular hourly rate or the overtime premium rate.  (Id.)  Other employees of FedEx Freight – whose job titles, duties, and work locations are unknown – were classified as exempt even though their positions required little skill and no capital investment, and their duties did not entail managerial responsibility or the exercise of independent judgment.  (Id. ¶ 27.)  These employees similarly worked in excess of forty hours per week, but received no compensation for the additional hours.  (Id. ¶ 28.)

**B. <u>Procedural Background</u>**

On May 10, 2006, Mr. Woodard filed a complaint against FedEx Corp. in the United States District Court for the Southern District of New York.  (Dkt. Entry 1-3.)  On June 12, 2006, Mr. Woodard filed an Amended Complaint substantially identical to the original complaint, except for naming FedEx Freight as the proper Defendant.  (Dkt. Entry 2.)  FedEx Freight moved under 28 U.S.C. § 1404(a) to transfer venue to this Court.  (Dkt. Entry 1-9.)  The parties stipulated to the transfer, and District Judge Kimba M. Wood entered an Order transferring the action to this Court.  (Dkt. Entry 1.)

The Amended Complaint consists of two counts.  First, Mr. Woodard asserts a claim under the FLSA to redress FedEx Freight's "policy and practice" of refusing to pay its employees overtime compensation for hours worked in excess of forty hours per week.  Mr. Woodard further alleges that FedEx Freight violated the FLSA by failing to maintain and

preserve records sufficient to enable a determination of the hours worked and wages earned by each employee.  (Am. Compl. ¶ 38.)  He claims such violations were "willful."  (Id. ¶ 39.) Among other things, Mr. Woodard prays for an order certifying his FLSA claim as a collective action and an award of unpaid overtime wages, liquidated damages, attorney's fees, and costs and expenses.  The proposed collective action group is defined as follows:

> [A]ll persons who are or were formerly employed by Defendant in the United States at any time since June 12, 2003 to the entry of judgment in this case (the "Collective Action Period") who were not paid for hours that they actually worked as well as for overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

(Id. ¶ 8.)

Count Two of the Amended Complaint seeks relief under the MWA and WPCL.  The same conduct underlying the FLSA claim – misclassification and failure to pay overtime – is alleged to have violated the MWA and WPCL.  Mr. Woodard purports to prosecute this claim as a Rule 23(b)(3) class action on behalf of himself and the following putative class:

> [A]ll persons who were employed by Defendant in the [Commonwealth] of Pennsylvania at any time since April 28, 2003, to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the PMWA and PWPCL and have not been paid for hours actually worked as well as overtime wages in violation of the PMWA and PWPCL (the "Class").

(Id. ¶ 15.)  Mr. Woodard requests an order certifying this claim as a Rule 23(b)(3) class action, as well as other relief similar to that sought under the FLSA.

On August 11, 2006, FedEx Freight filed its Motion to Strike or for More Definite Statement, (Dkt. Entry 3), and a supporting memorandum.  (Dkt. Entry 4.)  Mr. Woodard filed his brief in opposition thereto on November 8, 2006.  (Dkt. Entry 20.)  FedEx Freight filed a reply brief on November 27, 2006.  (Dkt. Entry 23.)  On December 14, 2006, Mr. Woodard filed a sur-reply letter brief.  (Dkt. Entry 27.)  The Court heard argument on FedEx Freight's motion on February 1, 2007.  (Dkt. Entry 33.)[3]

On September 7, 2007, Mr. Woodard filed his Motion to Toll FLSA-SOL, (Dkt. Entry 39), along with a supporting brief.  (Dkt. Entry 40.)  FedEx Freight filed an opposition brief on September 24, 2007.  (Dkt. Entry 42.)  Mr. Woodard filed a reply brief on October 4, 2007. (Dkt. Entry 43.)

## II. DISCUSSION

### A. Motion to Strike or for More Definite Statement

#### 1) Standard

Upon proper motion, a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Whether to grant a motion to strike is reserved to the discretion of the district court, although such motions are disfavored and usually

---

[3]FedEx Freight notified the Court of "supplemental authority" on January 7, 2008, (Dkt. Entry 45), and April 3, 2007.  (Dkt. Entry 37.)  Mr. Woodard notified the Court of supplemental authority on December 23, 2007, (Dkt. Entry 44); September 23, 2007, (Dkt. Entry 41); and June 1, 2007.  (Dkt. Entry 38.)

denied "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting River Rd. Dev. Corp. v. Carlson Corp.-Ne., Civ. A. No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). Courts are generally reluctant to strike class action allegations before the parties have the opportunity to engage in discovery or before a motion to certify is before the court.  See Ricciardi v. Elec. Data Sys. Corp., No. 03-CV-5285, 2005 WL 2782932, at *1 (E.D. Pa. Oct. 24, 2005).  Nevertheless, a district court will strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action.  See Thompson v. Merck & Co., Inc., Nos. C.A. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004).

A party may also move for a more definite statement if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Rule 12(e) must be viewed in light of the notice-pleading requirements of Fed. R. Civ. P. 8(a).  See Blue Fish Clothing, Inc. v. Kat Prints, Civ. A. No. 91-1511, 1991 WL 71113, at *4 (E.D. Pa. Apr. 29, 1991).  The decision to grant a motion for a more definite statement is committed to the discretion of the district court.  Clark v. McDonald's Corp., 213 F.R.D. 198, 232 (D.N.J. 2003).

### 2) <u>Mr. Woodard's MWA and WPCL Class Action Claims</u>

FedEx Freight argues that Mr. Woodard's state law class action allegations must be stricken because such a Rule 23 opt-out class action cannot be pursued simultaneously in federal court with a collective action under the FLSA.  FedEx Freight observes that the FLSA requires an employee to affirmatively opt in, or consent, to become a party plaintiff to the action.  <u>See</u> 29 U.S.C. § 216(b).  By contrast, Rule 23, which is inapplicable to the FLSA, but applicable to Mr. Woodard's MWA and WPCL claims, includes all putative class members in the action unless those individuals affirmatively opt out of, or request exclusion from, the case. FedEx Freight contends that the opt-in and opt-out devices are "inherently incompatible," and to allow Mr. Woodard to pursue both in the same proceeding will undermine Congress's intent in establishing the FLSA opt-in requirement.  (Reply Br. Supp. Def.'s Mot. Strike or More Definite Statement ("Def.'s Reply Br."), Dkt. Entry 23, at 6-7.)

Mr. Woodard counters that there is no inherent conflict between an FLSA collective action and a state law class action "since the rights for redress exist under two separate statutes – the FLSA and Pennsylvania law."  (Pl.'s Sur-reply Letter Br., Dkt. Entry 27, at 2.)  He argues the decisions cited by FedEx Freight fail to explain why these two actions cannot coexist in the same proceeding.  "Merely stating there is an incompatibility is not a demonstration of any such incompatibility."  (Id.)  Mr. Woodard observes that district courts within and without the Third Circuit have permitted wage and hour lawsuits to proceed

8

simultaneously as FLSA opt-in collective actions and state law Rule 23 opt-out class actions.

(Id. at 2 & n.2.)

The question of whether a plaintiff may assert an FLSA collective action and a state law

class action concurrently in federal court must be analyzed through the lens of supplemental

jurisdiction.  See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 307 (3d Cir. 2003); see also

28 U.S.C. § 1367; Freeman v. Hoffmann-La Roche, Inc., Civ. A. No. 07-1503 (JLL), 2007 WL

4440875, at *2 (D.N.J. Dec. 18, 2007); Neary v. Metro Prop. & Cas. Ins. Co., 472 F. Supp. 2d

247, 251 (D. Conn. 2007).  In this regard, the Court finds a compelling reason to decline

jurisdiction.  See 28 U.S.C. § 1367(c)(4).  Specifically, the Court agrees with FedEx Freight that

the opt-in regime of § 216(b) is "inherently incompatible" with the opt-out mechanism of Rule

23.  Moreover, the Court concludes that, where a plaintiff asserts an FLSA collective action and

a state law Rule 23 class action, both of which are predicated on the same facts and seek to

vindicate identical statutory rights, but the state law lacks an opt-in requirement, the

simultaneous prosecution of these claims will undermine the objectives Congress sought to

achieve by amending § 216(b) to require written consent to become party plaintiffs to FLSA

actions.  Under the circumstances, jurisdiction must be declined.  See Hyman v. WM Fin.

Servs., Inc., No. 06-CV-4038 (WJM), 2007 WL 1657392, at *6 (D.N.J. June 7, 2007).  Because

Mr. Woodard's state law class action allegations are immaterial, FedEx Freight's motion to

strike will be granted.

9

### a) **Supplemental Jurisdiction**

In 1990, Congress enacted 28 U.S.C. § 1367, the supplemental jurisdiction statute, which codified many of the principles enunciated by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).  Pursuant to § 1367(a), a district court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original [i.e., federal question or diversity] jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Mr. Woodard obtained federal jurisdiction by asserting a claim under the FLSA alleging FedEx Freight failed to pay him and other employees overtime compensation.  See 28 U.S.C. § 1331.  Supplemental jurisdiction over the MWA and WPCL claims is proper if such claims are part of the same case or controversy as the FLSA claim, that is, they share a "common nucleus of operative fact."  Gibbs, 383 U.S. at 725.

Here, Mr. Woodard's FLSA, MWA, and WPCL claims arise from the same controversy and share a common nucleus of operative fact.  As with the FLSA claim, Mr. Woodard's MWA and WPCL claims allege FedEx Freight violated those statutes by misclassifying him and others as exempt employees and failing to pay them overtime compensation.  Where, as here, a defendant's conduct allegedly "violate[s] parallel federal and state laws, the common nucleus of operative facts is obvious."  Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995); see also De Asencio, 342 F.3d at 308 (common nucleus of operative fact demonstrated where claims under FLSA and WPCL address whether defendant's employees should be paid for time donning and

doffing).  Accordingly, the Court has authority to exercise supplemental jurisdiction over Mr. Woodard's Pennsylvania law claims.

Even though the Court may exercise supplemental jurisdiction over non-federal claims, it has discretion to decline to exercise such jurisdiction under certain circumstances.  As the Supreme Court observed in Gibbs, 383 U.S. at 726, "[i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  Moreover, our Court of Appeals has stated that district courts can abuse their discretion by adjudicating supplemental claims regardless of their power to do so.  See, e.g., De Asencio, 342 F.3d at 312; Lyon, 45 F.3d at 760 n.4.

Section 1367 contains specific exceptions to supplemental jurisdiction.  There is no supplemental jurisdiction, for example, when "expressly provided otherwise by Federal statute." 28 U.S.C. § 1367(a).  The FLSA does not expressly address supplemental jurisdiction; § 1367(a), therefore, is inapplicable.  See De Asencio, 342 F.3d at 308-09 & n.10; see also Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416, 421-22 (D.C. Cir. 2006).

Section 1367(c) enumerates several circumstances that may warrant a district court declining supplemental jurisdiction.  Section 1367(c) provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if –

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over

11

which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original
jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons
for declining jurisdiction.

28 U.S.C. § 1367(c).  Mr. Woodard's state law claims implicate § 1367(c)(4).

### b) Exceptional Circumstances: The Circumvention of § 216(b)

Mr. Woodard asserts a Rule 23 class claim under the MWA to recover overtime

compensation allegedly due him and the members of the putative class.[4]  The MWA claim

---

[4]The Court's reference to Mr. Woodard's MWA claim encompasses both the MWA and
WPCL claims.  The source of Mr. Woodard's class claim is the MWA's overtime pay provision.
The WPCL, to the extent it applies, is the vehicle to enforce a right to compensation.  But see
43 Pa. Stat. Ann. § 333.113 (authorizing private right of action to redress violations of the
MWA).  It should be noted, however, that under a separate analysis of this claim, the Court
would decline to exercise jurisdiction because the WPCL claim "raises a novel or complex issue
of [Pennsylvania] law."  The WPCL provides employees "'with a statutory remedy when an
employer breaches its contractual obligation to pay wages.'"  Voracek v. Crown Castle USA
Inc., 907 A.2d 1105, 1109 (Pa. Super. Ct. 2006) (quoting Oberneder v. Link Computer Corp.,
674 A.2d 720, 722 (Pa. Super. Ct. 1996)) (emphasis added).  Put differently, the WPCL "'does
not create an employee's substantive right to compensation; rather, it only establishes an
employee's right to enforce payment of wages and compensation to which an employee is
otherwise entitled by the terms of an agreement.'"  Hartman v. Baker, 766 A.2d 347, 352 (Pa.
Super. Ct. 2000) (quoting Banks Eng'g Co. v. Polons, 697 A.2d 1020, 1024 (Pa. Super. Ct.
1997)).  Thus, an element of a WPCL claim is a contract to pay wages or other compensation.

Mr. Woodard's Amended Complaint is barren of any allegations that he and the other
allegedly misclassified employees worked under an employment agreement or collective
bargaining agreement that obligated FedEx Freight to pay overtime compensation, or that
FedEx Freight even promised orally to pay them overtime compensation.  In De Asencio, the
plaintiffs asserted a class claim under the WPCL.  The plaintiffs did not allege any express

mirrors the FLSA claim in all material respects except for one critical distinction: the MWA

contains no requirement that plaintiffs affirmatively opt in to the action.[5]

---

contract between defendant and its employees, but instead rooted their claim in an alleged implied contract by defendant to pay its employees for time donning and doffing.  342 F.3d at 305.  The Third Circuit observed this theory raised two novel and complex issues never addressed by Pennsylvania courts: whether a WPCL claim may rest on an implied employment contract, and whether the WPCL applies to "at will, non-collective bargaining employees."  Id. at 311.  "The need to resolve these issues . . . weigh[ed] in favor of declining supplemental jurisdiction."  Id.

In this matter, Mr. Woodard will have to show that the WPCL applies to at-will, non-collective bargaining employees.  Since De Asencio, no Pennsylvania court has addressed this novel and complex question of law.  See Ramsey v. Ryan Beck & Co., Civ. A. No. 07-635, 2007 WL 2234567, at *4 (E.D. Pa. Aug. 1, 2007).  Because this issue remains unresolved, the Court will exercise it discretion under 28 U.S.C. § 1367(c)(1) to decline supplemental jurisdiction over Mr. Woodard's WPCL class claim.

[5]At oral argument, Mr. Woodard's counsel argued that it is premature to determine whether to decline supplemental jurisdiction because De Asencio requires such determination to be made only on a factual record developed through discovery.  (Oral Argument Tr. 26.)  In De Asencio, the Court of Appeals reviewed the district court's order certifying the plaintiffs' WPCL claim as a Rule 23(b)(3) class action and held supplemental jurisdiction should have been declined because the plaintiffs' WPCL claim substantially predominated over the FLSA claim.  342 F.3d at 309-12; see also 28 U.S.C. § 1367(c)(2).  In so holding, the court's analysis was informed by the lower court record, which in turn was developed through discovery and the class certification motion.  Post-De Asencio, some district courts have deferred rulings on supplemental jurisdiction, reasoning that De Asencio requires discovery and a motion for class certification in order to decide this issue.  See, e.g., Freeman v. Hoffmann-La Roche, Inc., Civ. A. No. 07-1503 (JLL), 2007 WL 4440875, at *3 (D.N.J. Dec. 18, 2007); Lehman v. Legg Mason, Inc., — F. Supp. 2d —, No. 1:06-CV-02484, 2007 WL 2768519, at *4 (M.D. Pa. Sept. 20, 2007).

De Asencio, however, was premised on § 1367(c)(2), and nothing in that decision precludes this Court from declining supplemental jurisdiction prior to a class certification motion when it is clear that § 1367(c)(4) is implicated.  To the contrary, the Third Circuit charged district courts with "the responsibility to manage complex litigation," which necessarily "requires

In 1938, Congress enacted the Fair Labor Standards Act to eliminate conditions –

substandard wages and excessive hours – perceived as detrimental to the standard of living

and general well-being of workers.  29 U.S.C. § 202(a).  Among other things, the FLSA requires

employers to pay their employees one and one-half times the employee's regular hourly rate for

hours worked in excess of forty hours per week.  Id. § 207(a)(1).  An employer who violates the

overtime provision is "liable to the employee or employees affected in the amount of . . . their

unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."

Id. § 216(b).

Congress conferred on employees a private right of action to recover overtime

compensation.  See id.  As enacted originally, § 216(b) permitted individual claims as well as

representative actions.  See Ellis v. Edward D. Jones & Co., — F. Supp. 2d —, Civ. No. 06-66,

2007 WL 4426615, at *6 (W.D. Pa. Dec. 18, 2007).  After a Supreme Court decision in 1946

interpreted "working time" under the FLSA beyond the scope of Congress's intent, see

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the federal courts were deluged by

a flood of lawsuits resulting in "wholly unexpected liabilities, immense in amount and retroactive

---

a court to determine whether to exercise supplemental jurisdiction over pendant claims."  De
Asencio, 342 F.3d at 308.  See also Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 828 (E.D.
Pa. 2000) (because they are courts of limited jurisdiction, district courts must "'consider [their]
own jurisdiction preliminary to consideration of the merits,'" and, if necessary, "undertake such
an examination sua sponte" (quoting Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of
Phila., 657 F.2d 29, 36 (3d Cir. 1981))).

in operation, upon employers" that, if unrestrained, "would bring about financial ruin of many

employers."  29 U.S.C. § 251(a)(1).  See De Asencio, 342 F.3d at 306 (noting that between

July 1, 1946, and January 31, 1947, employees filed 1,913 FLSA actions across the country).

This litigation tsunami was exacerbated by an "'unwholesome' practice" allowed by the FLSA:

> "[The FLSA] allow[s] an individual to come into court alleging that he is suing
> on behalf of 10,000 persons and actually not hav[ing] a solitary person behind
> him, and then later on hav[ing] 10,000 men join in the suit, which was not
> brought in good faith, was not brought by a party in interest, and was not
> brought with the actual consent or agency of the individuals for whom an
> ostensible plaintiff filed the suit."

Ellis, 2007 WL 4426615, at *6-7 (quoting 93 Cong. Rec. 2, 2182 (1947) (statement of Sen.

Donnell)).

Resolved to counter this emergency by "defin[ing] and limit[ing] the jurisdiction of the

courts," 29 U.S.C. § 251(b)(3), Congress enacted the Portal-to-Portal Act of 1947 ("PPA"), ch.

52, 61 Stat. 84 (codified as amended at 29 U.S.C. §§ 251-262 and amending 29 U.S.C. §

216(b)).  The PPA's purpose was two-fold: "limit[] private FLSA plaintiffs to employees who

asserted claims in their own right and free[] employers of the burden of representative actions."

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).  In this regard, the PPA

amended § 216(b) by adding the following sentence: "No employee shall be a party plaintiff to

any such action unless he gives his consent in writing to become such a party and such

consent is filed in the court in which such action is brought."  29 U.S.C. 216(b).  This express

opt-in provision accomplishes Congress's objectives by limiting collective actions under the

FLSA to employees who affirmatively consent to join the lawsuit.  See Ramsey v. Ryan Beck & Co., Civ. A. No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007).  Moreover, the opt-in requirement ensures that only employees who affirmatively opt in will be bound by the judgment.  See Jackson v. City of San Antonio, 220 F.R.D. 55, 58 (W.D. Tex. 2003); see also Otto v. Pocono Health Sys., 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006) ("It is clear that Congress labored to create an opt-in scheme when it [amended] Section 216(b) specifically to alleviate the fear that absent individuals would . . . have their rights litigated without their input or knowledge.").

In contrast to § 216(b), class actions, such as Mr. Woodard's MWA claim, are brought under Fed. R. Civ. P. 23.  Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" if the requirements of Rule 23 are met.  Unlike § 216(b) collective actions, putative class members do not file written consents to join Rule 23 class actions.  On the contrary, a putative class member of a Rule 23(b)(3) class action is assumed part of the class unless he requests exclusion from, or affirmatively opts out of, the class.  See Fed. R. Civ. P. 23(c)(2)(B)(v) (notice to class certified under Rule 23(b)(3) must state that "the court will exclude from the class any member who requests exclusion").[6]

---

[6]For actions certified under Rule 23(b)(3), the Court must notify putative class members of the action.  Fed. R. Civ. P. 23(c)(2)(B).  Section 216(b) contains no similar notice requirement.  District courts, however, have discretion to "'facilitat[e] notice to potential plaintiffs'" of the pending collective action.  Ellis, 2007 WL 4426615, at *4 (quoting Hoffmann-La Roche, 493 U.S. at 169).

Additionally, putative class members who do not opt out of the class will be bound by the judgment.  See Fed. R. Civ. P. 23(c)(2)(B)(vii), 23(c)(3)(B).  Because of the incongruity between the opt-out Rule 23 class action and the opt-in § 216(b) collective action, Rule 23 is inapplicable to FLSA claims.  See De Asencio, 342 F.3d at 306; Lusardi v. Lechner, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988); see also LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288-89 (5th Cir. 1975) (opt-in and opt-out class actions are "mutually exclusive and irreconcilable," and therefore, "[i]t is crystal clear that [§ 216(b)] precludes pure Rule 23 class actions in FLSA suits").

Against this backdrop, the Court must determine whether claims under parallel federal and state overtime laws, the former an opt-in collective action, the latter an opt-out class action, may proceed simultaneously in federal court.  Our Court of Appeals has not squarely addressed this issue, but district courts within this circuit have done so.  The leading case on this issue is Ellis.  There, the plaintiffs filed a complaint alleging a national claim for overtime compensation under the FLSA as well as class action claims for overtime compensation under separate state statutes.  Ellis, 2007 WL 4426615, at *1-2.  The parties moved for certification of settlement classes and preliminary approval of the settlement, which resolved the FLSA and state wage law claims.  The court disapproved the settlement to the extent it covered the parallel state wage law claims, anchoring its decision on the incompatibility between the § 216(b) collective action and Rule 23 class action as well as the frustration of congressional

17

intent.

In disapproving the settlement, the court undertook a conflicts, or quasi-preemption, analysis that addressed "not whether federal law preempted recovery under parallel state wage and overtime laws, but merely whether both state and federal claims could be brought in the same federal action." Id. at *9.  The court observed that a state law conflicts with a federal law where, for example, "'the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'"  Id. (quoting Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988)).  Congress crafted the opt-in requirement of § 216(b) to control the volume of FLSA litigation and to "ensure that 'absent individuals would not have their rights litigated without their input or knowledge.'"  Id. (quoting Otto, 457 F. Supp. 2d at 524).  By mandating an opt-in class for FLSA claims, Congress made a "crucial policy decision."  De Asencio, 342 F.3d at 311.

Section 216(b), however, does not expressly preclude employees from asserting in the same proceeding class claims under state wage law.  Nevertheless, the court concluded that where the supplemental claim mirrors the FLSA claim and arises from the same conduct, but does not require class members to affirmatively opt in to the action, the state law conflicts with the FLSA and stands as an "obstacle to the accomplishment of the full purposes and objectives of Congress."  Ellis, 2007 WL 4426615, at *12.  See also Evancho v. Sanofi-Aventis U.S. Inc., Civ. A. No. 07-2266 (MLC), 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (echoing concern

of Ellis); Ramsey, 2007 WL 2234567, at *2 (same); Hyman, 2007 WL 1657392, at *6 (to

condone plaintiffs' litigation tactic of asserting a Rule 23 class action claim under state law that

"mimic[s]" their FLSA claim will negate Congress's intent "to ensure that only those plaintiffs

with a truly vested interest in the outcome of an overtime suit actually proceed with the action").

Moreover, the maintenance of the FLSA claim and parallel state law claim in the same action,

where both claims are predicated on the same conduct of the defendant, poses a significant

risk that employees, who neither opt in to the FLSA collective action nor opt out of the state law

class action, will be collaterally estopped from asserting FLSA claims in their own right.[7]  See

---

[7]At oral argument, Mr. Woodard's counsel conceded that an employee, who neither opts into the collective action nor opts out of the class action, will be collaterally estopped by the adjudication of the hybrid action from asserting a subsequent FLSA claim.  (Oral Argument Tr. 16.)  He dismissed this concern, however, arguing that "one would be collaterally estopped, but that's the individual's choice."  (Id.)  It is, however, doubtful that an employee's failure to respond to notice signifies a voluntary, conscious, and informed decision to be collaterally estopped.  Rather, an employee's non-response to notice of a hybrid action is likely the product of one of two forces.  First, there is "inertia" – "the view that the notice received in the mail is just another piece of junk that the recipient has neither the time nor the interest to read, let alone act on."  Ellis, 2007 WL 4426615, at *4.  Second, there is confusion.  In hybrid actions where the court certifies an FLSA collective action and a Rule 23 class action, the most efficient means to notify prospective plaintiffs and putative class members is by a single, combined notice.  An employee advised of the right to opt into the FLSA collective action and to opt out of the Rule 23 action might decide to do nothing.  See Chase v. AIMCO Props., L.P., 374 F. Supp. 2d 196, 202 (D.D.C. 2005).  Whether due to inertia or confusion, the employee's non-response makes the employee a party to the Rule 23 class action, but not to the FLSA collective action.  "A judgment in the class action might operate to preclude [the employee] from pursuing an FLSA claim on [the employee's] own, a result plainly at odds with Congress's intent to allow workers to preserve FLSA claims by declining to opt in."  Id.  See also Ellis, 2007 WL 4426615, at *6 (because hybrid actions "cause the FLSA claims to be swept into the case if class certification is granted," settlements in hybrid actions resolve all claims and usually provide that "putative

Ellis, 2007 WL 4426615, at *6.  Cf. Hall v. Burk, No. Civ. 301CV2487H, 2002 WL 413901, at *2

(N.D. Tex. Mar. 11, 2002) ("[T]hose who choose not to opt-in to [a] class action under § 216(b)

are not bound by and may not benefit from the judgment.").

    The court completed its analysis by examining each state law claim to determine

whether it was related to the FLSA claim.  See Ellis, 2007 WL 4426615, at *12-13.  The state

statutes at issue either provided rights identical to and tracked the language of the FLSA and

applicable regulations or referred expressly to the FLSA.  Id.  For instance, the Pennsylvania

and FLSA overtime provisions both mandate compensation of one-and-one-half times the

employee's regular hourly rate for all hours in excess of forty per week, id. at *12 (citing 29

U.S.C. § 207(a); 43 Pa. Stat. Ann. § 333.104(c)), and the Pennsylvania overtime exemptions

traced the FLSA exemptions virtually "word for word."  Id. (citing 29 U.S.C. § 213(a)(1); 43 Pa.

Stat. Ann. § 333.105(a)(5)).  The only difference was Pennsylvania law does not require opt-in

class actions to redress violations of the overtime provision.  Consequently, a MWA claim filed

in federal court as a class action will be maintained under Rule 23.  Since prosecution of the

---

class members [who] did not opt out of the Rule 23 class [will] be precluded from bringing any
FLSA claims even though they had not opted into the FLSA collective action" (quotation
omitted)).

    Regardless of why the employee fails to respond, the requirement that an employee opt
out of a hybrid action to preserve the employee's FLSA claim is contrary to the letter and spirit
of § 216(b).  By crafting the opt-in scheme, Congress envisaged employees taking affirmative
action to assert, not to preserve, their FLSA rights.

Pennsylvania claim would thwart congressional intent and create "an impermissible conflict," the court denied approval of the settlement and dismissed this claim.  Id. at *12, 19.

The court stressed, however, that problems of incompatibility and frustration of congressional intent arise only where the claims invoke parallel federal and state laws.  Id. at *11-12.  State law claims that are dissimilar to and involve conduct violating no provision of the FLSA may be pursued simultaneously in the same federal lawsuit.  See id. at *11; Brothers v. Portage Nat'l Bank, Civ. A. No. 3:06-94, 2007 WL 965835, at *5-6, 7 (W.D. Pa. Mar. 29, 2007) (plaintiff may pursue Rule 23 class claim to recover "gap-time wages" where FLSA does not impose liability for failure to pay "gap-time wages"; court declined supplemental jurisdiction, however, over the plaintiff's state law claims for minimum wages and overtime); see also Beltran-Benitez v. Sea Safari, Ltd., 180 F. Supp. 2d 772, 773 (E.D.N.C. 2001) (distinguished in Ellis; plaintiffs brought FLSA claim to recover overtime pay and North Carolina state law claim to recover amounts deducted improperly from the plaintiffs' paychecks).

The reasoning of Ellis and other cases that hold that parallel opt-in FLSA claims and opt-out Rule 23 state wage law claims may not proceed simultaneously in federal court is compelling.  Rule 23 is the antithesis of § 216(b): Rule 23 assumes an individual is a class member unless he or she affirmatively requests exclusion; § 216(b) assumes the individual is a nonparty unless he or she affirmatively consents to join.  These irreconcilable schemes have divergent consequences, such as the size of the respective classes and the binding effect of

judgments.  Moreover, this incompatibility is accentuated where the two schemes are utilized to

assert parallel claims.  In this regard, a state wage law without an opt-in requirement conflicts

with the FLSA by impeding the full accomplishment of congressional objectives.  Congress

amended § 216(b) to provide that only employees who affirmatively consent in writing may

become party plaintiffs to FLSA actions.  This requirement ensures that such actions are

pursued only by employees who genuinely have an interest in vindicating their FLSA rights.

Conversely, the opt-in requirement protects employees – who may have no desire at the

present moment to file a lawsuit under the FLSA – from having their FLSA rights adjudicated

without their knowledge by purported class representatives whose interests may not be aligned

with those whom they purport to represent.  These objectives will be defeated if plaintiffs can

obtain federal jurisdiction with an FLSA claim and then sidestep § 216(b)'s opt-in requirement

by asserting an opt-out class claim under parallel state law that lacks an opt-in requirement.  In

short, simultaneous prosecution effectively nullifies the PPA amendment to § 216(b).  Cf. 29

U.S.C. § 251(b)(3) ("It is declared to be the policy of the Congress . . . to define and limit the

jurisdiction of the courts." (emphasis added)).  When this happens, a compelling reason exists

to decline supplemental jurisdiction.[8]  See Hyman, 2007 WL 1657392, at *6.

─────────────────

[8]Supplemental jurisdiction over state law claims sought to be pursued on a class basis
has been declined under other federal statutory schemes.  In Hatfield v. Oak Hill Banks, 115 F.
Supp. 2d 893, 894 (S.D. Ohio 2000), plaintiffs asserted claims under the Magnuson-Moss
Warranty – Federal Trade Commission Improvement Act ("MMW-FTCIA") and a state
consumer protection statute.  The plaintiffs brought the MMW-FTCIA claim on their own behalf,

Mr. Woodard argues that there is nothing incompatible about simultaneous prosecution of an FLSA collective action and a state law Rule 23 class action.  The FLSA and MWA are separate statutes with separate rights.  (Pl.'s Sur-reply Letter Br. 2.)  The collective action vindicates FLSA rights; the Rule 23 class action defends MWA rights.  Mr. Woodard observes that numerous district courts within and without the Third Circuit allow wage and hour claims to proceed simultaneously as "'opt-in' collective actions asserting FLSA violations and Rule 23 'opt-out' class actions asserting violations of state wage and hour laws."  (Id.)  Several decisions cited by Mr. Woodard, however, never addressed the incompatibility of opt-in collective actions and opt-out class actions and whether simultaneous prosecution thereof will undermine Congress's intent.  See, e.g., Goldman v. Radioshack Corp., No. Civ. A. 03-0032, 2005 WL 1124172, at *3-4 (E.D. Pa. May 9, 2005) (defendant, in opposing certification of state law claim as class action, argued that common questions did not predominate over individual questions); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 264-65, 266-68 (D. Conn. 2002)

---

but sought class certification of the state law claims.  Id.  The MMW-FTCIA allows claims to be asserted on a class basis in federal court only if the number of named plaintiffs is at least one hundred.  Id. at 896 (quoting 15 U.S.C. § 2310(d)(3)(C)).  Because there were only two of them, the named plaintiffs moved for certification only as to the state law claims.  The plaintiffs conceded almost all of their state law claims could have been brought directly under the MMW-FTCIA.  Id. at 897 n.3.  The court declined supplemental jurisdiction under 28 U.S.C. § 1367(c)(4).  The court reasoned that the MMW-FTCIA's restriction on class actions is an "exceptional circumstance," and that the plaintiffs' "attempt to subvert the will of Congress and this express prerequisite by laundering their purported class through § 1367 and Rule 23 is a sufficiently 'compelling reason' to decline supplemental jurisdiction."  Id. at 898.

(parties' arguments directed towards whether plaintiffs met similarly situated requirement of §

216(b) and whether state law claim satisfied the requirements of Rule 23(a) and Rule 23(b)(3));

O'Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 350-52 (N.D. Ill. 2001) (defendants

resisted class certification by contending plaintiff could not satisfy numerosity or superiority

requirement); Trotter v. Perdue Farms, Inc., No. Civ. A. 99-893-RRM, 2001 WL 1002448, at *1

(D. Del. Aug. 16, 2001) (defendants contested class certification on the grounds that

commonality and typically were lacking and that plaintiffs were not adequate class

representatives); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 85-87, 90, 93-96

(S.D.N.Y. 2001) (defendants argued Rule 23 requirements not met and court should decline

supplemental jurisdiction over state law class action, though defendants never contended

circumvention of § 216(b)'s opt-in requirement constituted compelling reason to decline

jurisdiction).  That these courts allowed the FLSA and state law claims to proceed together is

not a rejection, sub silentio, of the arguments advanced by FedEx Freight.  Mr. Woodard's

reliance on these cases is misplaced.

       The other decisions cited by Mr. Woodard, which actually considered and rejected the

notion that an FLSA opt-in collective action is incompatible with a state law opt-out class action,

are unpersuasive.  Those courts generally resolved this issue in conclusory fashion, reasoning,

like Mr. Woodard, that the FLSA and state wage and hour laws are separate statutes providing

separate remedies; there was little or no consideration of Congress's intent.  See Frank v.

Gold'n Plump Poultry, Inc., No. Civ. 041018JNERLE, 2005 WL 2240336, at *5 (D. Minn. Sept.

14, 2005) (stating that "courts routinely certify FLSA opt-in classes and Rule 23 opt-out classes

in the same action" and noting that FLSA and state wage law remedies are distinct rights);

compare Ellis, 2007 WL 4426615 (undertaking thorough and convincing analysis of this issue).

The courts that discussed this issue in greater detail referred to the FLSA's "saving

clause," 29 U.S.C. § 218(a).  See Lehman v. Legg Mason, Inc., — F. Supp. 2d —, No. 1:06-

CV-02484, 2007 WL 2768519, at *3 (M.D. Pa. Sept. 20, 2007).  That provision, in part,

provides:

> No provision of this chapter or of any order thereunder shall excuse
> noncompliance with any Federal or State law or municipal ordinance
> establishing a minimum wage <u>higher</u> than the minimum wage established
> under this chapter or a maximum work week <u>lower</u> than the maximum
> workweek established under this chapter . . . .

29 U.S.C. § 218(a) (emphasis added).  Section 218(a) was drafted precisely to "leave

undisturbed 'the traditional exercise of the states' police powers with respect to wages and

hours <u>more generous than the federal standards</u>.'" Lehman, 2007 WL 2768519, at *3 (quoting

Pac. Merch. Shipping Ass'n v. Aubry, 918 F.2d 1409, 1421 (9th Cir. 1990)) (emphasis added).

(See also Oral Argument Tr. 16, 20.)[9]  A saving clause that covers a narrow range of state law,

---

[9]For example, Pennsylvania could require overtime compensation for all hours worked in
excess of thirty hours per week.  Because noncompliance with this hypothetical law is not
actionable under the FLSA, an employee could assert this claim legitimately – at least to
recover overtime compensation for hours worked in excess of thirty but not more than forty –
without circumventing § 216(b)'s opt-in requirement.  See Ellis, 2007 WL 4426615, at *11;

however, does not eliminate the possibility that other state laws, or even the laws "saved," will conflict with federal law and therefore frustrate Congress's intent.  See Ellis, 2007 WL 4426615, at *11 (quoting Geier v. Am. Honda Motor Co., 529 U.S. 861, 869, 873-74 (2000)).

As recognized in Ellis and Brothers, however, a conflict exists where, as here, the state wage law claim parallels the FLSA action.  Where the state law claim is brought to vindicate rights enjoying no similar protection under the FLSA, the FLSA is not implicated.  See Brothers, 2007 WL 965835, at *6 ("The FLSA's failure to create liability for [such conduct] heavily mitigates any concern for undercutting the protections of its opt-in mechanism.").

Ellis presents an appropriate analytical framework for determining whether an FLSA collective action and state law class action may proceed in the same lawsuit, and therefore, whether jurisdiction should be exercised. That analysis reduces to three questions.  First, are the plaintiff's FLSA and supplemental claims predicated on the same facts and conduct of the defendant?  Second, are the FLSA and state law provisions identical in all material respects?  Third, does the state law impose an opt-in requirement for claims asserted as class actions?

In this case, it is evident that Mr. Woodard's FLSA and MWA claims are predicated on the same conduct of FedEx Freight.  He alleges FedEx Freight misclassified its employees as exempt and relied on this misclassification to deny those employees overtime pay.  Second, the FLSA and MWA provisions parallel each other.  As explained in Ellis, both the FLSA and MWA

---

Brothers, 2007 WL 965835, at *6.

26

obligate employers to pay their employees overtime pay at a rate not less than one-and-one-half times their regular hourly rate for hours worked in excess of forty per week, see 29 U.S.C. § 207(a); 43 Pa. Stat. Ann. § 333.104(c); 34 Pa. Code § 231.41, and the exemptions under those acts are virtually identical.  See 29 U.S.C. § 213(a)(1); 43 Pa. Stat. Ann. § 333.105(a)(5). Third, the MWA does not contain an opt-in requirement analogous to the written consent provision of § 216(b).

Finally, the Court acknowledges the argument that "'considerations of judicial economy, convenience and fairness to litigants'" will be served best by retaining jurisdiction over Mr. Woodard's MWA class claim.  Ansoumana, 201 F.R.D. at 90 (quoting Gibbs, 383 U.S. at 726). "[T]he interest in joining [Mr. Woodard's parallel federal and state] actions is strong . . . ." De Asencio, 342 F.3d at 310.  Nevertheless, where, as here, judicial economy, convenience, and fairness will be achieved only at the expense of an express congressional policy decision in favor of opt-in classes for FLSA actions, such considerations must yield to Congress's preference.

In summary, the Court finds that simultaneous prosecution of Mr. Woodard's FLSA collective action and MWA class action will frustrate congressional intent and circumvent § 216(b)'s opt-in requirement.  Because this constitutes a compelling reason to decline jurisdiction over the MWA class claim, the Court will grant FedEx Freight's motion to strike the

Rule 23 class allegations.[10]

### 3) The FLSA Collective Action

Mr. Woodard also brings an FLSA claim to recover overtime pay.  He seeks to prosecute this claim as a collective action under § 216(b) on behalf of himself and others similarly situated.  FedEx Freight has moved to strike from the Amended Complaint the collective action allegations.  FedEx Freight argues that the linchpin of Mr. Woodard's FLSA claim is FedEx Freight's misclassification of Mr. Woodard and other employees as exempt from the FLSA overtime pay requirement.  FedEx Freight contends that the misclassification question will entail a "fact-specific, individualized inquiry into each plaintiff's day-to-day activities," an inquiry not susceptible to collective treatment.  (Mem. Supp. Def.'s Mot. Strike or More Definite Statement ("Def.'s Supp. Mem."), Dkt. Entry 4, at 12.)  FedEx Freight also observes that the proposed collective action group includes all FedEx Freight employees who were not paid overtime.  Given the breadth of the proposed group, FedEx Freight contends Mr. Woodard will be unable to show he is "similarly situated" to the opt-in plaintiffs.  (Id. at 11-12.)

Mr. Woodard opposes FedEx Freight's motion.  He contends that misclassification cases are appropriate for collective treatment and, indeed, are certified as such.  (Pl.'s Opp'n Br. to Def.'s Mot. Strike or More Definite Statement ("Pl.'s Opp'n Br."), Dkt. Entry 20, at 10.)

---

[10]Mr. Woodard is free, of course, to pursue his MWA claim individually, and any employees who opt in may likewise assert an MWA claim.

Moreover, where courts have denied certification, they had the benefit of a factual record to ascertain whether the plaintiff was similarly situated to the opt-in plaintiffs.  (Id. at 11-12.)  No discovery has been undertaken by the parties in this matter.  Thus, Mr. Woodard contends that FedEx Freight's motion to strike is premature.  Finally, to the extent the proposed group as defined in the Amended Complaint is too broad, Mr. Woodard asserts that discovery will enable him to "refine and limit the class prior to moving for 216(b) certification."  (Id. at 11.)

Section 216(b) allows an employee to maintain an action on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  Although the FLSA does not define "similarly situated," the phrase contemplates individuals "employed under the same terms and conditions."  2 Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance and Practice § 20.19.50.  To determine whether a plaintiff is similarly situated to the proposed collective group, district courts in this circuit apply a two-step approach.  The first step is the "notice stage," where the "court determines whether notice of the action should be given to potential class members."  Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000).  The standard here is "fairly lenient," requiring a "modest factual showing" that plaintiff is similarly situated to the proposed group.  Smith v. Sovereign Bancorp, Inc., No. Civ. A. 03-2420, 2003 WL 22701017, at *2-3 (E.D. Pa. Nov. 13, 2003).  The initial determination usually results in conditional certification.  See Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000); Morisky, 111 F. Supp. 2d at 497.

The second step occurs after discovery is complete, usually triggered by the defendant's motion for decertification.  The court applies a stricter standard in analyzing the "similarly situated" issue because more information is available.  Morisky, 111 F. Supp. 2d at 497.  If the court concludes the plaintiff is similarly situated to the other employees, the matter proceeds to trial as a collective action.  Id.

FedEx Freight argues that the Amended Complaint demonstrates Mr. Woodard will satisfy neither step of the collective action certification standard.  First, FedEx Freight argues that misclassification cases are unsuitable for collective action treatment because they require a "fact-specific," "highly individualized inquiry" into each plaintiff's job functions.  (Def.'s Supp. Mem. 12.)  This concern, while not meritless, is an insufficient basis to strike the collective action allegations.  The determination whether an employee was classified properly as exempt is "fact-specific," but the cases FedEx Freight cites do not stand for the proposition that misclassification claims are <u>never</u> susceptible to collective treatment.  Instead, those cases merely recognize that courts must examine an employee's duties and activities actually performed in order to ascertain the employee's status; job titles and job descriptions are not dispositive.  <u>See</u> Ale v. Tenn. Valley Auth., 269 F.3d 680, 689 (6th Cir. 2001); Bohn v. Park City Group, Inc., 94 F.3d 1457, 1461 (10th Cir. 1996); Anderson v. City of Cleveland, Tenn., 90 F. Supp. 2d 906, 916-17 (E.D. Tenn. 2000).

Indeed, district courts often conditionally certify misclassification cases.  <u>See, e.g.</u>,

Neary v. Metro. Prop. & Cas. Ins. Co., 517 F. Supp. 2d 606, 620-22 (D. Conn. 2007); Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM)(LMS), 2007 WL 1552511, at *4-5, 6-7 (S.D.N.Y. Apr. 26, 2007); Stanfield v. First NLC Fin. Servs., LLC, No. C 06-3892 SBA, 2006 WL 3190527, at *3-4 (N.D. Cal. Nov. 1, 2006); Aquilino v. Home Depot, Inc., No. Civ. 04-CV-4100 PGS, 2006 WL 2583563, at *1-2 (D.N.J. Sept. 7, 2006).  Where the evidence adduced at step two demonstrates the plaintiff is similarly situated to the collective action members, courts have denied motions for decertification.  See, e.g., Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1352 (N.D. Ga. 2002); Moss, 201 F.R.D. at 410-11.  To be sure, district courts in misclassification cases have denied conditional certification motions and granted decertification motions.  See, e.g., Evancho v. Sanofi-Aventis U.S. Inc., Civ. A. No. 07-2266 (MLC), 2007 WL 4546100, at *3-4 (D.N.J. Dec. 19, 2007); Reyes v. Tex. Ezpawn, L.P., Civ. A. No. V-03-128, 2007 WL 101808, at *7 (S.D. Tex. Jan. 8, 2007); Diaz v. Elecs. Boutique of Am., Inc., No. 04-CV-0840E(SR), 2005 WL 2654270, at *3-4 (W.D.N.Y. Oct. 17, 2005); Morisky, 111 F. Supp. 2d at 498-99.  (See also Def.'s Supp. Mem. 12-14 (citing cases).)  As Mr. Woodard correctly observes, however, those cases were decided on a factual record developed through discovery or, at a minimum, affidavits submitted by the parties.  In this matter, by contrast, only the Amended Complaint is before this Court.  In light of the limited record and the case law approving collective actions in misclassification cases, it is impossible to conclude as a matter of law that Mr. Woodard is foreclosed from pursuing a collective action.  Consequently, FedEx

31

Freight's motion to strike on this basis will be denied.

FedEx Freight also contends that Mr. Woodard's collective action allegations must be stricken because the proposed collective group is defined so broadly that he will be unable to establish he is situated similarly to other FedEx Freight employees.  (Def.'s Supp. Mem.11-12.) Mr. Woodard purports to assert this collective action on behalf of "all persons who are or were formerly employed by [FedEx Freight] in the United States . . . who were not paid for hours that they actually worked as well as for overtime compensation."  (Am. Compl. ¶ 8.)

Despite the breadth of the proposed collective group definition, the Court is unable to conclude as a matter of law, as it must to strike the collective action allegations, that Mr. Woodard will not satisfy the standards for certification.  The Court will, however, grant FedEx Freight's alternative request for a more definite statement.

Rule 12(e) allows a party to move for a more definite statement of a pleading that "is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion . . . must point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e).  A Rule 12(e) motion should be granted where, inter alia, the defendant cannot in good faith answer the complaint with a general denial because it lacks certain information known only to the plaintiff.  Clark v. McDonald's Corp., 213 F.R.D. 198, 233 (D.N.J. 2003).

Here, the Amended Complaint defines the proposed collective action group as all current and former FedEx Freight employees denied overtime compensation.  (Am. Compl. ¶

8.)  Mr. Woodard incorporated this definition into other allegations of the Amended Complaint, such as paragraph thirty-seven, where he alleges FedEx Freight willfully failed to compensate him and the collective action group for hours worked in excess of forty per week.  (Id. ¶ 37.) Because the proposed collective action group is vague and ill-defined, FedEx Freight argues it "will have a difficult time admitting or denying his pleading because it does not know to which group of employees it applies."  (Def.'s Reply Br. 17.)  This Court agrees.

Mr. Woodard's pleading affords no basis for FedEx Freight to compose a responsive pleading.  At best, FedEx Freight is left to guess as to which employees it failed to pay overtime in violation of the FLSA.  And while Mr. Woodard intimated that discovery is necessary to define the class, (see Pl.'s Opp'n Br. 11 ("Through limited discovery, Plaintiff will refine and limit the class prior to moving for 216(b) certification.")), his attorney conceded at oral argument that the parameters of this group are known to Mr. Woodard.  (Oral Argument Tr. 20-21.)  Counsel represented that the FLSA claim is asserted "on behalf of people like Mr. Woodard, the people who work on the docks, the people who work inside the doors of the docks and move the freight around."  (Id.)  Mr. Woodard may not know the particular job titles at issue, but he can "describe the universe of the class functionally."  (Id. at 21.)  As such, "[i]t is not too much for [Mr. Woodard] to specify in [his] amended complaint the [employees whom he contends are situated similarly to him], which is a matter peculiarly within [his] knowledge."  Clark, 213 F.R.D. at 234.  Moreover, by filing a more definite and precise statement, the proposed collective

group will be "sufficiently defined and manageable from the outset," Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003), and the parties can allocate resources more efficiently throughout the litigation.  Clark, 213 F.R.D. at 233.  Consequently, FedEx Freight's motion for a more definite statement will be granted.[11]

### B. Motion to Toll FLSA-SOL

While FedEx Freight's Motion to Strike or for More Definite Statement was pending, Mr. Woodard filed a motion for equitable tolling of the FLSA statute of limitations.  (Dkt. Entry 39.) Mr. Woodard argues that FedEx Freight's motion has prevented him from conducting discovery necessary to move for conditional certification of the collective action.  (Pl.'s Br. Supp. Mot. Toll FLSA-SOL ("Pl.'s Supp. Br."), Dkt. Entry 40, at 6-7.)  The conditional certification motion, in turn, will seek to notify prospective plaintiffs of this action; thus, FedEx Freight's motion has precluded notice to prospective plaintiffs.  (Id. at 6.)  Because the statute of limitations for each prospective plaintiff continues to run until the employee files in this Court a written consent, Mr. Woodard contends this delay – which he attributes "entirely [to] Defendant's meritless motion to strike," (id. at 8) – will prejudice the prospective plaintiffs' FLSA rights unless the statute of limitations is tolled.  (Id. at 7.)  Therefore, Mr. Woodard argues that the FLSA statute of

---

[11]Because the Court is striking the Rule 23 class action allegations and requiring a more definite statement regarding the proposed collective action group, for the sake of simplicity and clarity, the Court will direct Mr. Woodard to file a second amended complaint consistent with this Memorandum.

limitations should be tolled until FedEx Freight answers the Amended Complaint.

Actions under the FLSA to recover overtime compensation must be commenced within two years of the alleged violation, or within three years thereof if the violation is willful. 29 U.S.C. § 255(a). An action is commenced for a named plaintiff, such as Mr. Woodard, on the date when the complaint is filed. Id. § 256(a). For employees who subsequently opt in, however, the action is not commenced until the date on which their written consent is filed. Id. § 256(b). Consequently, Mr. Woodard's action was commenced, and the statute of limitations tolled with respect to his claim, on the date he filed the Amended Complaint; for the prospective opt-in plaintiffs, this will occur when they file their written consents. Evancho, 2007 WL 4546100, at *4; cf. Quintanilla v. A & R Demolition Inc., Civ. A. No. H-04-1965, 2006 WL 1663739, at *2 (S.D. Tex. June 13, 2006) (observing that in Rule 23 class actions the filing of the complaint tolls the statute of limitations for putative class members). Moreover, the written consents, when properly filed, will not relate back to the filing date of the Amended Complaint. See Cahill v. City of New Brunswick, 99 F. Supp. 2d 464, 479 (D.N.J. 2000). Therefore, in the absence of equitable tolling, the prospective opt-in plaintiffs' recovery will be limited to the two- or three-year period preceding their written consents.

The equitable tolling doctrine is read into every federal statute of limitations, including the FLSA. Genarie v. PRD Mgmt., Inc., No. Civ. A. 04-2082 (JBS), 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006). Nevertheless, equitable tolling is a "remedy available only sparingly

and in extraordinary situations." Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997); see

also Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990).  Our Court of Appeals has

described three principal situations where equitable tolling may be warranted: (1) "'the

defendant has actively misled the plaintiff'"; (2) "'the plaintiff has "in some extraordinary way"

been prevented from asserting his rights'"; or (3) "'the plaintiff has timely asserted his rights

mistakenly in the wrong forum.'"  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir.

1992) (quoting Kocian v. Getty Ref. & Mktg. Co., 707 F.2d 748, 753 (3d Cir. 1983)); see also

Evancho, 2007 WL 4546100, at * 4 n.6; Hann v. Crawford & Co., No. Civ. A. 00-1908, 2005 WL

2334676, at *5 (W.D. Pa. Aug. 9, 2005).  The plaintiff bears the burden to prove that tolling is

appropriate.  Hann, 2005 WL 2334676, at * 4 (citing Courtney v. La Salle Univ., 124 F.3d 499,

505 (3d Cir. 1997)).

        In this matter, Mr. Woodard has failed to show that the limitations period should be

tolled.  Significantly, Mr. Woodard does not allege that FedEx Freight actively misled him or the

prospective plaintiffs or engaged in misconduct designed to hinder their ability to file an FLSA

claim.[12]  Further, the record discloses nothing extraordinary that has prevented Mr. Woodard or

---

        [12]Examples of misconduct include the defendant's refusal to furnish to the named
plaintiffs contact information of prospective plaintiffs necessary to facilitate notice of the action,
see, e.g., Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 543 (N.D. Cal. 2007);
Quintanilla, 2006 WL 1663739, at *2; Boldozier v. Am. Family Mut. Ins. Co., 375 F. Supp. 2d
1089, 1092-93 (D. Colo. 2005), or the defendant's violation of FLSA regulations that require
posting of notice to inform employees of their rights.  See Cisneros v. Jinny Beauty Supply Co.,
No. 03 C 1453, 2004 WL 524482, at *1 (N.D. Ill. Feb. 6, 2004).  Mr. Woodard does not assert

the prospective plaintiffs from asserting an FLSA claim.[13]

Mr. Woodard complains that FedEx Freight's "unfounded" Motion to Strike or for More Definite Statement has prejudiced the prospective plaintiffs by postponing discovery and the conditional certification motion, which, in turn, has delayed notice of this action to the prospective plaintiffs.  This contention is without merit.  First, the filing of a motion permitted by the Federal Rules of Civil Procedure is not, as Mr. Woodard suggests, per se misconduct. Indeed, there is no evidence FedEx Freight filed the motion in bad faith, and as evident by the discussion in Part II(A)(2) supra, the motion is legally supportable and not "unfounded."[14]

Second, the delay notifying prospective plaintiffs that might be engendered by FedEx Freight's motion is not an extraordinary circumstance that warrants equitable tolling.  In this regard, Congress knew when it enacted 29 U.S.C. § 256 that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period  See Quintanilla, 2006 WL 1663739, at *3; see also Grayson v. K Mart Corp., 79 F.3d 1086, 1106

_____

any such grounds as a basis to toll the limitations period.

[13]Some courts have found equitable tolling necessary when the defendant moves for, and the court grants, a stay of litigation.  See Castle v. Wells Fargo Fin., Inc., No. C 06-4347 SI, 2007 WL 1105118, at *2 (N.D. Cal. Apr. 10, 2007) (See also Exs. A-B to Pl.'s Supp. Br., Dkt. Entries 40-3 & 40-4.)  FedEx Freight has not filed a motion to stay this litigation.

[14]Moreover, Mr. Woodard acquiesced in the delay by agreeing with FedEx Freight to postpone discovery in aid of a conditional certification motion until after disposition of FedEx Freight's motion.  (See Jt. Case Mgmt. Plan, Dkt. Entry 24, at 10, 12.)

(11th Cir. 1996) ("In [amending § 216(b)], Congress expressed the concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.").  As such, courts must be cautious about equitably tolling the FLSA limitations period especially where, as here, there are no allegations of wrongdoing on the part of the defendant.  Because Mr. Woodard fails to advance a persuasive justification for this Court to disregard the plain language of 29 U.S.C. § 256(b) in favor of tolling the statute of limitations, his Motion to Toll FLSA-SOL will be denied.

## III. CONCLUSION

For the reasons stated, the Court will grant in part and deny in part FedEx Freight's Motion to Strike or for More Definite Statement, and deny Mr. Woodard's Motion to Toll FLSA-SOL.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM WOODARD,** | : |
| **Plaintiff** | : |
| **v.** | :    **3:CV-06-1968** |
| | :    **(JUDGE VANASKIE)** |
| **FEDEX FREIGHT EAST, INC.,** | : |
| **Defendant** | : |

## <u>ORDER</u>

**NOW, THIS 19th DAY OF FEBRUARY, 2008,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Strike or for More Definite Statement (Dkt. Entry 3) is **GRANTED IN PART AND DENIED IN PART** as follows:

a) Defendant's Motion to Strike the Rule 23 class action allegations is **GRANTED**.  The Rule 23 class action allegations are stricken from the Amended Complaint.

b) Defendant's Motion for More Definite Statement regarding the FLSA collective action group on whose behalf Plaintiff brings this action is **GRANTED**.  Plaintiff shall file a more definite statement regarding the proposed collective action group consistent with the foregoing Memorandum.

c) In all other respects, Defendant's Motion to Strike or for More Definite Statement is **DENIED**.

2. Plaintiff's Motion to Toll the Running of the FLSA Statute of Limitations Period (Dkt.

Entry 39) is **DENIED**.

3. **Within twenty (20) days** of the date of this Order, Plaintiff shall file a second amended complaint that omits all Rule 23 class action allegations and contains a more definite statement regarding the proposed collective action group.

4. **Within fifteen (15) days** of the date of service of the second amended complaint, Defendant shall answer the second amended complaint.

5. A telephone scheduling conference shall be conducted on **Wednesday, March 19, 2008, at 10:00 a.m.**   Attorney Peter Winebrake is responsible for calling **(570) 207-5720**, and all parties shall be ready to proceed before the undersigned is contacted.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

2